STEPHEN J. ERIGERO (SBN 121616)
PASCALE GAGNON (SBN 207117)
**ROPERS MAJESKI PC**
801 South Figueroa St, Suite 2100
Los Angeles, CA 90017
Telephone: 213.312.2000
Facsimile: 213.312.2001
Email: stephen.erigero@ropers.com
pascale.gagnon@ropers.com

Attorneys for Defendants
WEST YOST & ASSOCIATES, INC.,
CHARLES DUNCAN AND ERNIE LIU

ROPERS MAJESKI
A Professional Corporation
Los Angeles

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

STEPHEN DOPUDJA, an individual; JON WELLS, an individual,

Plaintiffs,

v.

WEST YOST & ASSOCIATES, INC., a California corporation, CHARLES DUNCAN, an individual, and ERNIE LIU, an individual,

Defendants.

Case No. 8:23-cv-01923-JVS-ADS

**[DISCOVERY DOCUMENT: REFERRED TO MAGISTRATE JUDGE AUTUMN D. SPAETH]**

**JOINT STIPULATION RE DEFENDANTS' MOTION FOR PROTECTIVE ORDER RE PLAINTIFFS' SECOND SUBPOENAS FOR RECORDS TO CALIFORNIA BANK OF COMMERCE AND BFBA, LLP PURSUANT TO LOCAL RULE 37-2**

*[Filed Concurrently with Defendants' Not of Mtn for Prot. Order Re Plaintiffs' Subpoenas for Records per Local Rule 37-2; Decl. of Pascale Gagnon and Exhibits thereto; Decl. of Thomas L. Gourde and Exhibits Thereto]*

**Hearing Date: September 27, 2025**
**Hearing Time: 10:00 a.m.**
**Courtroom: 6B**
**Disc. Cutoff: September 15, 2025**
**Pretrial Conf.: January 5, 2026**
**Trial Date: January 27, 2026**

**TABLE OF CONTENTS**


I. INTRODUCTORY STATEMENTS ..... 1
A. WY'S INTRODUCTORY STATEMENT ..... 1
B. DOPUDJA AND WELLS' INTRODUCTORY STATEMENT ..... 4
II. DEFENDANTS' STANDING TO SEEK PROTECTIVE ORDER REGARDING THIRD PARTY SUBPOENAS ..... 9
A. DEFENDANTS' CONTENTIONS REGARDING STANDING ..... 9
B. PLAINTIFFS' CONTENTIONS REGARDING STANDING ..... 10
III. FACTUAL STATEMENTS RELATED TO SECOND SUBPOENAS ..... 10
A. DEFENDANTS' TIMELINE OF EVENTS RELEVANT TO ISSUE BEFORE THE COURT ..... 10
B. PLAINTIFFS' TIMELINE OF EVENTS RELEVANT TO ISSUE BEFORE THE COURT ..... 12
IV. ISSUES IN DISPUTE REGARDING THE SUBPOENAS ..... 24
A. PLAINTIFFS' SECOND SUBPOENA TO CBC ..... 24
1. WEST YOST'S CONTENTIONS REGARDING PLAINTIFFS' SECOND SUBPOENA TO CBC ..... 24
A. APPLICABLE STANDARD ..... 25
B. PLAINTIFFS' SECOND SUBPOENA TO CBC VIOLATES THE APPLICABLE STANDARDS AND THEREFORE JUSTIFY THE ISSUANCE OF A PROTECTIVE ORDER ..... 26
2. PLAINTIFFS' CONTENTIONS REGARDING THEIR SECOND SUBPOENA TO CBC ..... 29
B. PLAINTIFFS' SECOND SUBPOENA TO BFBA ..... 29
1. WEST YOST'S CONTENTIONS REGARDING PLAINTIFFS' SECOND SUBPOENA TO BFBA ..... 30
A. APPLICABLE STANDARD ..... 30
B. PLAINTIFFS' SECOND SUBPOENA TO BFBA VIOLATES THE APPLICABLE STANDARDS AND THEREFORE JUSTIFY THE ISSUANCE OF A PROTECTIVE ORDER ..... 31
2. PLAINTIFFS' CONTENTIONS REGARDING THEIR SECOND SUBPOENA TO CBC ..... 34

Pursuant to Local Rule 37-2, Defendants West Yost & Associates, Inc. ("WY"), Charles Duncan ("Duncan") and Ernie Liu ("Liu") (collectively "Defendants") and Plaintiffs Stephen Dopudja ("Dopudja") and Jon Wells ("Wells") (collectively "Plaintiffs"), by and through their respective counsel of record, hereby submit the following Joint Stipulation setting forth their respective position in connection with WY's Motion for Protective Order Regarding Plaintiffs' Second Subpoenas for Records to California Bank of Commerce ("CBC") and BFBA, LLP ("BFBA") (the "Second Subpoenas"). Pursuant to Local Rule 37-2.1, a copy of the Orders Regarding Scheduling Dates are attached as Exhibits 1 and 2 to the Declaration of Pascale Gagnon ("Gagnon Decl.") submitted concurrently herewith. (Gagnon Decl. ¶ 3, Ex. 1 (Dkt. 33), Ex.2 (Dkt. 36).

## I. INTRODUCTORY STATEMENTS

### A. WY's Introductory Statement

WY is seeking a protective order in connection with the Second Subpoenas served upon CBC and BFBA by Plaintiffs, which seek records for the period of December 30, 2024, to the present—a time period bearing no nexus to the claims pending before the Court, which all relate to then alleged misconduct of Defendants in connection with Plaintiffs' purchased of stock (starting in 2016) and the redemption thereof upon the triggering of an Option Event by their resignations in January 2021—thereby resulting on the Second Subpoenas seeking disclosure of information and documents that are irrelevant and not proportional to the need of the case based on the nature of the two claims asserted, which information and documents are also private, confidential, proprietary and privileged information and documents of WY by Plaintiffs, who are competitors of WY.

This case involves a dispute between Plaintiffs and Defendants arising from alleged misrepresentations made to Plaintiffs by WY, including through Duncan, WY's President, and Liu, WY's Chief Financial Officer, in connection with Plaintiffs' purchase of WY's stock in the course of their employment. Plaintiffs

ROPERS MAJESKI
A Professional Corporation
Los Angeles

were employed by WY, a consulting engineering firm, with Wells beginning his employment in September 2011 and Dopudja in or about September 2014. Starting in 2016, both purchased stock in WY—some paid cash and others with cash down payments and promissory notes. Thereafter, in November 2016, a Restrictive Stock Agreement ("RSA") intended to govern WY's stock was submitted to and executed by all shareholders, including Plaintiffs. The RSA was setting forth various provisions that would govern the stock and all shareholders of WY. By letters dated January 4 and 5, 2021, Dopudja and Wells, respectively, resigned from their employment with WY, which resignations were accepted in writing on January 8, 2021, with an election by WY for that day to be their last day of employment.

The operative Complaint asserts two causes of action: (1) Violations of Section 10(b) of the Securities and Exchange Act of 1934 ("Exchange Act") and Exchange Act Rule 10b-5 and (2) Fraud. (See, Gagnon Decl. ¶ 4, Ex. 3 (Dkt. 1).)

While the Complaint includes an array of assertions, mostly conclusionary and unrelated to the claims made, the charging allegations unequivocally delineate the relevant time period and issues in this case:

- On the Exchange Act claim, Plaintiffs allege: ". . .Defendants WY, DUNCAN and LIU ***made material misrepresentations*** to Plaintiffs regarding their purchase of WY stock and that the Shareholders and their respective shares of WY would be governed by the RSA (Ex. A)." (See, (See, Gagnon Decl. ¶ 4, Ex. 3 (Dkt. 1) at ¶ 56), ***emphasis added***.)
- On the Fraud claim, Plaintiffs allege: ". . . Defendants WY, DUNCAN and LIU made ***various misrepresentations*** to Plaintiffs that were false. Defendants WY, DUNCAN and LIU ***represented*** to Plaintiffs that when they purchased WY stock, all transaction involving the governance of the stock would be handled in accordance with the RSA (Ex. A). Defendants WY, DUNCAN and LIU ***represented*** to Plaintiffs that when they purchased WY stock, all transaction involving the governance of the stock



ROPERS MAJESKI A Professional Corporation Los Angeles

ROPERS MAJESKI
A Professional Corporation
Los Angeles

> would be handled in accordance with the RSA (Ex. A). Defendants made these representations to Plaintiffs to induce them into signing the RSA with the belief that their respective stock in the company (WY) would be governed by the terms of the RSA, which they had the opportunity to review and agree to. However, when Plaintiffs resigned from WY, the repurchase of their respective shares of stock were not handled in accordance with the terms of the RSA." (See, Gagnon Decl. ¶ 4, Ex. 3 at ¶ 62), ***emphasis added***.)

Thus, it is clear that the gravamen of Plaintiffs' claims is the alleged material ***misrepresentations*** made to them about the applicability of the RSA that allegedly led to their purchase of stock—events that necessarily took place between 2016 when the first purchase of stock took place by Plaintiffs and the RSA was presented to the shareholders and 2021 when Plaintiffs' resignation triggered an Option Event and the redemption process for their shares. (See, Gagnon Decl. ¶ 4, Ex. 3 (Dkt. 1) at ¶¶ 12, 16, 18-19.)

In the weeks following the issuance of the Second Subpoenas, the parties engaged in a comprehensive meet and confer process to resolve the dispute associated with the Second Subpoenas. Upon receiving the Second Subpoenas, Defendants emailed Plaintiffs about the issues with the Second Subpoenas, advising that a meet and confer letter would be forthcoming and asking for a telephonic meet and confer. (Gagnon Decl. ¶ 5, Ex. 4.) Defendants thereafter sent the letter discussing the issues with the Second Subpoenas and reiterating the requests for a telephonic meet and confer. (Gagnon Decl. ¶ 6, Ex. 5.) On August 12, 2025, Plaintiffs sent a response to the meet and confer in advance of the telephonic meet and confer purporting to set forth the basis for their position. (Gagnon Decl. ¶ 7, Ex. 6.) The telephonic meet and confer was set for August 13, 2024, but did not proceed due to counsel for Plaintiffs being held longer than anticipated in another matter and was rescheduled for August 14, 2025. (Gagnon Decl. ¶ 8.) The parties

met and conferred on August 14, 2025, but no resolution could be reached as Plaintiffs will not accept anything but all the records sought, regardless of their overbreadth in time making the information and documents sought thereby wholly irrelevant and lacking proportionality to the issues in the case as set forth in the operative Complaint. (Gagnon Decl. ¶ 9)

Rather than focusing their discovery on matters at issue in this case, Plaintiffs here have thrown the net wide with the Second Subpoenas at issue herein—seeking information and records from December 30, 2024 to the present despite the events at the heart of the case all having taken place more than three years before— in a desperate fishing expedition to get anything to attack WY regardless of the relation to the claims and defenses herein and to try and support their belated attempt at amending the Complaint.

Following up the meet and confer call, an email was sent setting forth the agreed upon timeline for the briefing of the motion rendered necessary by the failure to reach an agreement, with Defendants proposing to instead seeking to resolve the dispute arising from the Second Subpoenas by way of an Informal Discovery Conference to approach the issue in an efficient and expedient manner for the parties and the Court, a proposal declined by Plaintiffs. (Gagnon Decl. ¶ 10, Ex. 7.) As such, WY is now seeking the issuance of a Protective Order as to the Subpoenas as discussed in more details hereinafter

**B. Dopudja and Wells' Introductory Statement**

The issues of Plaintiffs' subpoenas to CBC and BFBA has already been heard by this Court, and as before, the Court should deny Defendants' request. Defendants previously filed a motion requesting a protective order regarding Plaintiffs initial subpoenas to BFBA, CBC, Chartwell Financial Advisory, Inc., and J. P. Morgan Chase Bank on October 16, 2024. Plaintiffs' opposed the request and even file a Supplemental Memorandum of Law. (See **Exhibit 1** to Decl. of Thomas L. Gourde filed concurrently herewith.) The Court denied Defendants' request for a protective

ROPERS MAJESKI
A Professional Corporation
Los Angeles

order regarding the subpoenas. (See **Exhibit 2** [order denying motion for protective order] to the Decl. of Thomas L. Gourde filed concurrently herewith.) Plaintiffs second subpoenas to BFBA and CBC simply asks that these entities update their previous production of records from December 30, 2024 to present date (each subpoena was served on August 1, 2025). This information is pertinent as WY has still not paid Plaintiffs for their shares, and its actions are a continuation of its violation of:

- Section 5 of the Securities Act of 1933 (cancelling shares and treating them as repurchased, without proper consideration);
- Exchange Act § 13(b)(2) – Books and records provision (unlawfully cancelling shares and removing the shareholder from the ledger);
- California Corp. Code §§ 1500, 1600–1603 – (Requires accurate maintenance of shareholder records);
- Securities Act of 1933;
- Securities and Exchange Act of 1934, Section 10(b), Rule 10b-5;
- California Corp. Code § 500(a) - (No corporation shall make any distribution to the shareholders unless the board of directors has determined in good faith that the amount of such distribution does not exceed the amount of retained earnings of the corporation immediately prior to the distribution);
- California Corp. Code § 300(a) - (Subject to the provisions of this division and any limitations in the articles... the business and affairs of the corporation shall be managed and all corporate powers shall be exercised by or under the direction of the board); and
- California Corp. Code § 418(b) - (the stock ledger is the definitive record of shareholders. Legal title passes only when the ledger is properly updated following valid procedures);

/ / /

ROPERS MAJESKI
A Professional Corporation
Los Angeles

Indeed, because of what has been received in response to the original subpoenas, Plaintiffs are seeking leave to amend their complaint and that motion will be heard in this Court on September 22, 2025.

This case involves more than a mere dispute between Plaintiffs and Defendants arising from misrepresentations made to Plaintiffs by WY, including through Duncan, WY's President and Liu, WY's Chief Financial Officer in connection with Plaintiffs' purchase of stock in the course of their employment. It involves fraudulent and misleading conduct by WY, Duncan and Liu during the course of Plaintiffs' employment and throughout the process of the repurchase of Plaintiffs' shares of stock in WY. Additionally, it involves violation of securities law relating to WY's inappropriate mishandling of the repurchase of Plaintiffs' stock and violation of Plaintiffs' shareholder rights as stockholders of WY.

DOPUDJA began work for WY in 2014, and WELLS began work for WY in 2011. On November 23, 2016, Plaintiffs and the other shareholders of WY entered into a Restrictive Stock Agreement ("RSA") of the same date and related to WY's election as a Subchapter S corporation. The RSA set forth various terms and conditions, including those that would govern the transfer of stock in the event of insolvency, bankruptcy, termination of shareholder, divorce of shareholder, death or total disability of a shareholder. The RSA was to be equally applicable to all shareholders of WY.

After Plaintiffs submitted their resignations, WY, Duncan and Lui engaged in numerous activities that further violated the RSA and securities law. Defendants failed to comply with the repurchase process set forth in the RSA, attempted to defraud Plaintiffs by having them sign a Promissory Note that included a subordination agreement and other provisions that reduced Plaintiffs rights as selling shareholders as set forth in the RSA, and by unilaterally cancelling Plaintiffs shares and their shareholder rights without consideration, in violation of securities law. These violations, among other actions taken by WY voided the RSA.

Although Defendants contend that issues regarding the RSA have already been adjudicated in a related arbitration conducted between WY and Plaintiffs, the scope of that arbitration was never about a complete analysis and ruling on the entire RSA. The arbitration was very limited in scope, by WY, to the issue of the validity of the liquidated damages provision of the RSA.

WY filed its Demand for Arbitration with JAMS on January 31, 2022. WY sought arbitration on the very narrow issue related of the interpretation of the RSA, specifically as to the enforceability of the Restrictive Covenant and Liquidated Damages provision under Section 7.11 of the RSA. Indeed, in that Demand for Arbitration, the Nature of Dispute is described as "Dispute regarding Restrictive Covenant and Liquidated damages provisions of Restrictive Stock Agreement and related terms of Stock Redemption Agreement." Indeed, the Arbitrator throughout the arbitration has made note of the January 31, 2022 Demand for Arbitration in his consideration of the matter. Set forth in the Stipulation for Arbitration prepared by WY to detail the dispute for arbitration dated January 26, 2022, it states as follows:

> It is stipulated and *agreed by the Parties to submit all disputes related to the Restrictive Stock Agreement* ***only*** *and specifically section 7.11* to neutral, binding arbitration at JAMS, pursuant to the JAMS Arbitration Administrative Policies and*, unless otherwise agreed in writing by the parties*, to the applicable JAMS Arbitration Rules and Procedures. *All disputes otherwise arising out of the former employment relationship between the parties, including wrongful termination and wage hour claims, are excepted and may be separately litigated*. [emphasis added]

No such expansion of what was in front of the Arbitrator was ever set forth in a stipulation between the parties, or otherwise agreed to in writing by the Parties, or detailed in any briefing as part of the Phase I hearing, and there was no mention of considering "related terms of (the) Stock Redemption Agreement." Despite the Arbitrator's ruling and limitation on Phase II issues, the scope of issues in Phase II were expanded beyond finding that the liquidated damages provision of the RSA was valid and enforceable.



ROPERS MAJESKI
A Professional Corporation
Los Angeles

It became abundantly clear during the JAMS arbitration why WY chose to carve Section 7.11 out of the RSA and focus solely on Respondents' alleged breach of that section, because if the entire RSA was before the arbitrator from the beginning, evidence would support a case that WY breached numerous provisions of the RSA and took actions that would have invalidated the entire RSA and any rights WY had thereunder. WY's numerous violations of the RSA, in essence, voided the RSA, and WY would not be entitled to recover any damages under the RSA—specifically Section 7.11. (Civ. Code § 1700)

In the interim, on January 20, 2022, DOPUDJA initiated a state court case for (1) Violation of Labor Code 1102.5, (2) Breach of Contract (3) Retaliation, (4) Wrongful Termination in Violation of Public Policy [Constructive Discharge], (5) Unfair Business Practices against WY, Case No. 30-2022-01241583-CU-OE-CJC. After WY obtained a court order that DOPUDJA arbitrate some of the claims he was making in his state court action -- on November 7, 2022, Petitioners submitted to the Arbitrator their Phase II Claims for: (1) Breach of Contract, and (2) Violation of Unfair Business Practice Act. WY filed a Motion to Exclude Respondents Claims from Phase II of the Arbitration. The Arbitrator denied Petitioners' request to submit their affirmative claims to the arbitration despite, as noted below, the fact that in part these claims that were part of the state court case were ordered to arbitration at the request of WY.

At the same time, WY sought a stay of the state court proceedings not ordered to arbitration so that no discovery could be conducted in that case--and in addition to no consideration of the affirmative claims in the arbitration—sought no allowance of adjudication of excluded issues that may have brought out information applicable in the arbitration even though Phase II was not completed. In large part due to Defendants' pattern of providing evasive responses in the extremely limited discovery allowed in the arbitration, and its refusing to produce documents with regard to discovery in both the arbitration and the instant action, Plaintiffs believed

ROPERS MAJESKI
A Professional Corporation
Los Angeles

it had no choice but to subpoenas third-parties to obtain the discoverable documents. Defendants' efforts to limit discovery is much the same tactic as used in the State court case (*Stephen Dopudja vs. West Yost & Associates, Inc*., Case No. 30-2022-01241583-CU-OE-CJC) wherein Defendant WY filed a motion for a protective order, appointment of referee, and request to limit discovery. (See **Exhibit 3** to Decl. of Thomas L. Gourde filed concurrently herewith.) The Court denied Defendant's WY's motion in its entirety. (See **Exhibit 4** to Decl. of Thomas L. Gourde filed concurrently herewith.)

Although Defendants contend that Plaintiffs are engaged in a fishing expedition, "[M]uch of discovery is a fishing expedition of sorts, but the Federal Rules of Civil Procedure allow the courts to determine the pond, the type of lure, and how long the parties can leave their lines in the water." *Myers v. Prudential Ins. Co. of America* (ED TN 2008) 581 F.Supp.2d 904, 913; see also FRCP Rule 26(b)(1).

## II. DEFENDANTS' STANDING TO SEEK PROTECTIVE ORDER REGARDING THIRD PARTY SUBPOENAS

### A. Defendants' Contentions Regarding Standing

As expressly held by courts across the Ninth Circuit and the country, parties (Defendants in this instance) have standing to bring a motion for protective order under Rule 26(c) to challenge third-party subpoenas that seek irrelevant and overly broad information, and thus impose an undue burden on the party. *See*, *e.g.*, *Elite Lighting v. DMF, Inc.*, No. CV 13-1920 JC, 2013 WL 12142840 (C.D. Cal. May 6, 2013) (granting defendants' motion for protective order and quashing seventeen subpoenas plaintiff served on defendants' independent sales representatives); *In re REMEC, Inc. Securities Litigation*, No. 04cv1948 JLS (AJB), 2008 WL 2282647 (S.D. Cal. May 30, 2008) (holding that a party "has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information.").

ROPERS MAJESKI
A Professional Corporation
Los Angeles

In that case, the Southern District held that the defendants had standing to seek a protective order under Rule 26(c) with regard to subpoenas that had been issued to defendants' financial advisor and business partners: "A party can move for a protective order in regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information. Several Courts within the Ninth Circuit . . . have recognized this sound principle of law. As such, this Court finds that Defendants have standing to seek a protective order under Rule 26(c) pursuant to the third-party subpoenas." *In re REMEC, Inc. Securities Litigation*, No. 04cv1948 JLS (AJB), 2008 WL 2282647 (S.D. Cal. May 30, 2008)

While a Stipulated Protective Order was entered in this action, it pertains to the parties' ability to designate documents that are relevant and proportional to the need of the case produced in this case as Confidential—not a protective order aimed at preventing abusive discovery.

### B. Plaintiffs' Contentions Regarding Standing

Plaintiffs do not dispute that Defendants have standing to bring a motion for protective order under Rule 26(c) to challenge third-party subpoenas. Plaintiffs do point out, however, that a Stipulated Protective Order (a copy of which is attached as Exhibit A to the Decl. of Thomas L. Gourde) has already been filed in this action.

## III. FACTUAL STATEMENTS RELATED TO SECOND SUBPOENAS

### A. Defendants' Timeline of Events Relevant to Issue Before the Court

This case involves limited issues for which many allegations in Plaintiffs' Complaint and anticipated arguments are nothing but surplusage intended to muddy the evidentiary showing needed to be made by Plaintiffs on their two causes of action. The relevant key events underlying the claims and delineating the relevant issues and time period in this case can be surmise as follows:

ROPERS MAJESKI
A Professional Corporation
Los Angeles

| Date | Event |
|---|---|
| September 2011 | Wells begins employment with WY |
| September 2014 | Dopudja begins employment with WY |
| January 2016 | Dopudja purchases 878.00 shares of stock in WY |
| November 2016 | WY submits RSA for execution by shareholders who do execute |
| End of 2016 | WY pays distribution to shareholders of record as of the Record Date, including Dopudja based on his 878.00 shares |
| January 2017 | Dopudja purchases 260.00 shares of stock in WY |
| End of 2017 | WY pays distribution to shareholders of record as of the Record Date, including Dopudja based on his 1,138.00 shares |
| January 2018 | Dopudja purchases 205.00 shares of stock in WY |
| End of 2018 | WY pays distribution to shareholders of record as of the Record Date, including Dopudja based on his 1,343.00 shares |
| June 2019 | Dopudja granted 267.92 shares of stock in WY in bonus |
| June 2019 | Wells granted 203.62 shares of stock in WY in bonus and purchased 20.36 shares of stock in WY |
| October 2019 | Dopudja purchased 1,389.08 shares of stock in WY |
| October 2019 | Wells purchased 176.02 shares of stock in WY |
| End of 2019 | WY pays distribution to shareholders of record as of the Record Date, including Dopudja based on his 3,000.00 shares and Wells based on his 400 shares |
| End of 2020 | WY pays distribution to shareholders of record as of the Record Date, including Dopudja based on his 3,000.00 |

ROPERS MAJESKI
A Professional Corporation
Los Angeles

| | |
|---|---|
| | shares and Wells based on his 400 shares |
| January 2021 | Dopudja and Wells tendered their resignation on January and 5, 2021 respectively |
| January 2021 | WY accepts Plaintiffs' resignation and undertake the redemption process following the Option Event triggered by Plaintiffs' resignation, including tender of the repurchase price thereof based on the 2019 valuation, subject to true-up per the terms of the RSA |
| January-February 2021 | Communications between counsel for Plaintiffs and WY relating to the redemption package |
| April 2021 | WY submits updated redemption packets with the updated value of the shares per 2020 valuation and assessment of the liquidated damages triggered by Plaintiffs' violation of Section 7.11 pf the RSA |
| January 2022 | WY and Plaintiffs enter into Stipulation for Arbitration and submit Demand for Arbitration based thereon re RSA and redemption related disputes |

It is therefore undisputable that the time period covered by the Second Subpoenas, December 30, 2024, to the present, lacks any connection to the claims asserted in this instant action since it is based on the alleged misrepresentations made to Plaintiffs leading to their purchase of shares, and WY's alleged different treatment of Plaintiffs' with regard to their shares—all ending in 2021 when their resignation triggered an Option Event and redemption of their shares under the RSA.

**B. Plaintiffs' Timeline of Events Relevant to Issue Before the Court**

This case involves numerous details and to assist the Court in understanding the full extent of the issues involved, Plaintiffs provide the following timeline of

ROPERS MAJESKI
A Professional Corporation
Los Angeles

key events:

| Date | Event | Comment/Analysis |
|---|---|---|
| Sept. 2011 | Plaintiff Jon Wells starts work at WY | |
| Sept. 2014 | Plaintiff Stephen Dopudja starts work at WY | |
| Nov. 2016 | Stock Purchase Agreement is signed by all shareholders ("RSA") | |
| 10/1/2019 | Dopudja and WY enter into a Stock Purchase Agreement | Sect. 6.1 Seller (WY) warrants that all documents delivered to Buyer shall have been true and correct when made. |
| 12/21/2019 | Email from Jeff Pelz to all shareholders who purchased shares on 10/1/19, stating that WY needed to amend the Stock Purchase Agreement to avoid violation of S-Corp requirement to have only one class of stock. | This email shows that WY had not followed IRS rules regarding S-Corp. having only one class of stock.<br><br>The agreement called for distribution that would result in a different per-share amount to different shareholders and would create multiple classes of stock. |
| 01/02/2020 | Email from Ernie Liu forwarding the Addendum Stock Purchase Agreement which increased the price of the stock that was purchased on | Exhibit 2 to Decl. of T. Gourde |



ROPERS MAJESKI
A Professional Corporation
Los Angeles

| | | |
|---|---|---|
| | 10/1/2019. | |
| Fall 2020 | Issues arise involving Plaintiff Dopudja's position on the Board of Directors of two water districts and his employment with WY. Dopudja was a member of the Board of Directors prior to his employment with WY. Actions taken by WY raised a potential Govt. Code § 1090 conflict. | WY acquisition of Wildermuth Environmental, Inc. (WEI) who had projects with the water districts Dopudja was a board member of caused the Govt. Code § 1990 issue to arise. |
| Sept. – Dec. 2020 | As Dopudja continued to express his concerns over the § 1090 conflict, WY began taking adverse employment actions against Dopudja. | WY violates Labor Code § 1102.5 – which forbids retaliation for employee disclosure of information to government agencies. |
| Jan. 2021 | Due to numerous issues such as: (1) the ongoing unresolved issues related to the § 1090 conflict, (2) WY's position that Dopudja resign his board memberships with the two water districts, (3) WY's unfair treatment of Dopudja regarding the NEW scorecard, (4) the ongoing attempts to wrongfully blame Dopudja for mistakes he did not make, and (5) the application of sales credits against Dopudja; Dopudja felt he was left | Dopudja was constructively discharged by WY. Although the employee may say, "I quit," the employment relationship is actually severed by the employer's acts against the employee's will. As a result, a constructive discharge is legally regarded as a firing by the employer rather than a |

| | | |
|---|---|---|
| | with no choice but to submit his resignation to WY. | voluntary resignation or retirement by the employee. [*Turner v. Anheuser-Busch, Inc.,* (1994) 7 C4th 1238, 1244-1245, 32 CR2d at 226; *Thompson v. Tracor Flight Systems, Inc.* (2001) 86 CA4th 1156, 1166, 104 CR2d 95, 102] |
| 1/4-5/21 | Plaintiffs here submit their respective resignations and request repurchase of their stock | Plaintiffs provided a two-week notice |
| 1/8/21 | WY sends a letter to Plaintiffs accepting their resignations and electing January 8, 2021, as the last day of employment for Plaintiffs. At or about this same time, Duncan and Lui unilaterally "void" Plaintiffs shares in WY without notifying them. | This letter also denied knowledge of a § 1090 conflict , despite Dopudja's direct email exchange with Charles Duncan and Greg Chung. |
| 1/20/21 | Plaintiffs, Greg Chung and Ernie Liu held a conference call. The call was purportedly scheduled for the purpose of having Plaintiffs do contract work for WY; however, Ernie Liu used the call to threaten Plaintiffs with litigation, claiming that WY had claims against both of "six to seven | Although this was the first time WY reached out to Dopudja and Wells regarding doing contract work for WY, Dopudja had previously been informed by others that WY had represented to clients that a |



ROPERS MAJESKI
A Professional Corporation
Los Angeles

| | | |
|---|---|---|
| | figures" for financial consequences and responsibilities in response to the ongoing Govt. Code. § 1090 violation. | contracting arrangement was already in place. |
| 1/29/21 | Ernie Liu sends an email and overnight package stating "we have begun the process of redeeming your West Yost stock…" The overnight package was to contain: (1) Stock Redemption Agreement, (2) Spousal Consent, (3) Check for 10% of net sales value of stock. Plaintiffs were asked to return the signed documents by 2/8/21. | The package did not contain a Promissory Note. The RSA does not require that departing shareholders sign a Stock Redemption Agreement. |
| Jan-Feb. 2021 | Counsel for Plaintiffs Nathan Heyde and counsel for WY, Dan Coyle, exchange emails regarding issues with the 1/29/21 package of documents sent to Plaintiffs. | No resolution was reached regarding the issues in dispute—and no notice to Plaintiffs that their shares were already voided. |
| 04/23/21 | WY sends a letter to each Plaintiff indicating that WY assessed Liquidated Damages pursuant to section 7.11.2 of the RSA – with no other explanation given. The letter also enclosed a (1) Stock Redemption Agreement, (2) Promissory Note, (3) Chase Bank Subordination Agreement, and (4) Spousal Consent; | WY did not provide a proper tender of its obligations pursuant to the terms of the RSA. First, the Stock Redemption Agreement is not a requirement under the RSA. Second, the Promissory Note was materially altered |

| | | |
|---|---|---|
| | and requested a return of the original share certificates. WY stated "The company has performed all its obligations under the terms of the RSA by the delivery of the foregoing documents. We expect that you will respond timely and promptly to this tender of performance by the company in accordance with the terms of the RSA." | from the Promissory Note (attached as Exhibit B to the RSA) that was to be used for a stock sale. Third, nowhere in the RSA is there a requirement to sign a Subordination Agreement to Chase Bank. |
| 6/9/21 | WY sends a letter to each Plaintiff stating that on 1/29/21 (as opposed to the 4/23/21 letter ) WY sent the Stock Redemption Agreement, Promissory Note and Spousal Consent to Plaintiffs. The letter stated that Plaintiffs failed to perform under the RSA after the WY's tender of performance. The letter then informs Plaintiffs that because they did not sign the Stock Redemption Agreement, Promissory Note, Spousal Consent, or return their share certificate (as "required by the Stock Redemption Agreement"), that "effective as of June 9, 2021, your interest as a shareholder of Company | First, WY did NOT send a promissory note to Plaintiffs on 1/29/21. Second, there is no requirement in the RSA for Plaintiffs to sign a Stock Redemption Agreement. Third, the promissory note sent on 4/23/21 contained a subordination agreement and was materially altered from the promissory note attached as Exhibit B to the RSA to be used when stock was sold. Accordingly, WY never made a proper tender of |



ROPERS MAJESKI A Professional Corporation Los Angeles

| | | |
|---|---|---|
| | is terminated and the … [# of each Plaintiff's share certificates] held in your name are hereby cancelled." | performance under the RSA. |
| 6/9/21 | The 6/9/21 letter informs each Plaintiff that because they did not sign the Stock Redemption Agreement, Promissory Note, Spousal Consent, or return their share certificates (as "required by the Stock Redemption Agreement"), that "effective as of June 9, 2021, your interest as a shareholder of Company is terminated and the … [# of each Plaintiff's share certificates] held in your name are hereby cancelled." | WY unilateral cancellation of Plaintiffs' shareholder interests and cancellation of their share certificates, (without the offer of full compensation of the shares), was a violation of securities laws and illegal. WY has admitted in their discovery responses that it had no authority from its Board of Directors to take this unilateral action. Additionally, despite conflicting testimony, the 6/9/21 letter makes it abundantly clear that until that date, Plaintiffs were deemed to be shareholders of WY – otherwise why would the letter say "effective as of June 9, 2021, your interest as shareholders of Company is |

ROPERS MAJESKI
A Professional Corporation
Los Angeles

| | | |
|---|---|---|
| | | terminated" – that implies implicitly that until 6/9/21 Plaintiffs **were** still shareholders of WY. |
| 6/24/21 | WY holds a Shareholders Meeting. The RSA is amended purportedly to support a loan agreement with Chase Bank. | WY represented that a credit line with Chase would benefit WY and ultimately its shareholders because it would provide easier access to capital and funding for future strategic opportunities. |
| June 2021 | WY used the increased credit line from Chase to buyout its ESOP. The buyout created an Event of Default per the RSA by exceeding a 25% ownership change.<br><br>Plaintiffs were members of the ESOP. | The buyout of the ESOP increased majority shareholders ownership by about 40% at a discount price; allowed for internal transfers; burdened the firm with debt; and resulted in minority shareholders having a substantially weakened prospects for payment of shares. |
| 1/31/22 | WY filed its Demand for Arbitration on the narrow issue related to Section 7.11 of the RSA regarding liquidated damages. | The issue of the validity of the entire RSA was never before the Arbitrator. |

ROPERS MAJESKI
A Professional Corporation
Los Angeles

| | | |
|---|---|---|
| 9/19/23 Transcript P.40, 11/14/23 Transcript P. 81 | Ernie Liu at deposition testified that the stock was voided on the first of January. In his testimony during Arbitration, he testified that the shares were voided on 2/1/21. This implies that Plaintiffs' shareholders interest terminated when their stock was voided – although this was before they were paid for their stock. | Ernie Liu's testimony conflicts with his letter of 6/9/21 that states "effective Junen 9, 2021" the Plaintiffs' shareholders interests and share certificates were cancelled. |
| 9/19/23 Transcript P.67,71,80 | Ernie Liu at deposition testified that when the stock is voided, the remaining shareholders receive a reverse dilution of their stock. | The timing of the "voiding" of shares is important because until they are **properly** voided, Plaintiffs remain shareholders, and the reverse dilution and valuation of other shareholders shares are impacted; the value of each shareholders shares and what percentage of the year each shareholder held those shares impacts the calculation for tax purposes |
| 9/19/23 Transcript | Ernie Liu testified that the purchase and voiding of shares happens at the | This did not happen with Dopudja and Wells shares |

ROPERS MAJESKI A Professional Corporation Los Angeles

| | | |
|---|---|---|
| P. 104 | same time. | as their shares were never purchased by WY. |
| 11/15/23 Transcript P. 451 | Ernie Liu testified that the K-1 is the only thing that they needed to do to institute a report on the sale of shares. He got this information from WY accountants, BFBA. | WY is stating that they relied on their accountant, BFBA's advice regarding when the sale of shares occur and how to report it. |
| | When WY produces the K1s for 2021, the number of shares at the beginning of the year and the end of the year are the same. | This is not possible given that Plaintiffs' shares were voided either in early January, February 1, 2021, or on June 9, 2021 (pursuant to Ernie Liu's letter of the same date). |
| 01/19/2024 | Arbitration Demand of Bruce West for misrepresentation. | Attached as **Exhibit 4** to Decl. of Thomas L. Gourde filed concurrently herewith |
| 05/25/2025 | Notice of Petitioners Stephen Dopudja and Jon Wells' Demand for Payment Pursuant to Arbitration Award | Despite filing with the Court a demand for payment of their shares, Defendant have still failed and refused to make payments. |

Plaintiffs' requested that WY pay them for their shares as was ordered by the Arbitrator (See **Exhibit 5** attached to the Decl. of Thomas L. Gourde filed concurrently herewith). WY however to date has failed to pay Plaintiffs for their shares and accrued interest pursuant to the Arbitration Award and despite Plaintiff's

formal request that WY do so.

In light of the fact that later in the preceding the Arbitrator (contrary to his own rulings) stated that the "whole of the RSA was before him", it is abundantly clear that Dopudja and Wells should have been allowed to bring their affirmative claims in the then pending arbitration and to have been allowed to conduct discovery and submit evidence as to those affirmative claims. It makes no economic or judicial sense to have two separate arbitrations take place, with potentially two different arbitrators, when the same contract (the RSA) and the same parties to the dispute were already engaged in an arbitration. "Arbitrators tend to be at least as liberal as courts in permitting amended and supplemental claims and counterclaims. The reason is that denying an application to amend may lead to commencement of a separate arbitration and, absent some statutory or contractual basis for consolidation, needless expense and even inconsistent outcomes." (Rutter Group, *Alternative Dispute Resolution, Conduct of Arbitration*, (1)[5:384.1] It is also the case that a claim which arises out of the same transaction as set forth in the demand for arbitration should be raised as a counterclaim in the arbitration proceeding. If the respondent fails to do so, the arbitration award may be res judicata, barring assertion of that claim in later proceedings. [See *International Ambassador Programs, Inc. v. Archexpo* (9th Cir. 1995) 68 F3d 337, 340, fn. 2 (citing Rest.2d Judgments § 22)] An arbitration award bars relitigation of the matters heard *or that could have been heard* in the arbitration proceeding. [*Thibodeau v. Crum* (1992) 4 CA4th 749, 755, 6 CR2d 27, 29; see *Trollope v. Jeffries* (1976) 55 CA3d 816, 823, 128 CR 115, 120; *Lewis v. Circuit City Stores, Inc*. (10th Cir. 2007) 500 F3d 1140, 1147] The Arbitrator's denial of Petitioners' request to assert their affirmative claims into the then pending arbitration was extremely prejudicial to Petitioners' as it has put them in the position of having the defense of res judicata and/or collateral estoppel potentially available as a shield for WY to use to unjustly bar Petitioners' ability to pursue their affirmative claims in further proceedings in different

tribunals.

In the instant action by Plaintiffs, WY has used the defense of res judicata, collateral estoppel and issue preclusion in its objections to discovery propounded by Plaintiffs. WY uses these defenses despite the fact that the Arbitrator had severely limited or precluded Plaintiffs from engaging in full discovery related to the entire RSA and disallowed Plaintiffs' affirmative claims to be heard in the arbitration. Thus, a full and complete analysis of the RSA was *never* before the arbitrator.

The problematic nature of the Arbitrator's limitation on discovery during the arbitration is now exploitable by WY, as although it was able to have Petitioners' affirmative claims excluded in the arbitration, it now raises the defense of res judicata as it relates to those claims in the Petitioners federal case. If Plaintiffs would have been allowed to bring their affirmative claims and to conduct full discovery and submit evidence regarding their claims, the outcome of the arbitration would likely have been very different. WY should not be allowed to argue the defense of "res judicata" in other proceedings when there was not a full adjudication of the issues related to the RSA in the limited scope of the arbitration that took place.

Plaintiffs have submitted a Petition to Vacate the Arbitration Award. Plaintiffs were substantially prejudiced by the refusal of the Arbitrator to postpone/stay the hearing upon sufficient cause being shown therefor, by the refusal of the Arbitrator to hear evidence material to the controversy, and by other conduct of the Arbitrator contrary to the provisions of Code of Civil Procedure Title 9, Chapter 4, Article 1 [CCP §§ 1285-1287.6] Indeed, the Arbitrator's denial of Plaintiffs' request to assert their affirmative claims into the then pending arbitration was extremely prejudicial to Plaintiffs as it puts them in the position of potentially having the defense of res judicata and/or collateral estoppel available to opposing parties which hinder Plaintiffs' ability to pursue their affirmative claims in further

proceedings in different tribunals. In light of the fact the Arbitrator denied Plaintiffs' the right to bring their affirmative claims into the then pending arbitration, the Arbitrator's denial of the two requests for stay of the arbitration pending the outcome of the Federal claim also prejudiced Plaintiffs ability to bring those claims before the federal court without having to defend against the defense of res judicate and/or collateral estopped being raised.

WY has relied on the defense of res judicate and collateral estoppel in its objections to Plaintiffs' discovery requests. Even though the discovery allowed in the arbitration was strictly limited by the arbitrator. WY in the arbitration, as in the instant action, has steadily refused or evaded providing requested discovery responses and documents.

## IV. ISSUES IN DISPUTE REGARDING THE SUBPOENAS

### A. Plaintiffs' Second Subpoena to CBC

The second subpoena to CBC, which provides for a production date of September 2, 2025, sets for the scope of what is requested as follows:

> "The records to be produced are described as follows: **THE RECORDS REQUESTED ARE from 12/30/2024 to present FOR THE FOLLOWING TYPES OF RECORDS: ANY AND ALL DOCUMENTS, RECORDS, COLLATERAL DESIGNATIONS, FINANCIAL REPORTS, SHAREHOLDER INFORMATION AND//OR DISCLOSURES, CORPORATE RECORDS AND TAX DOCUMENTS PRODUCED AND/OR PROVIDED BY WEST YOST & ASSOCIATES, INC. OR ANY OF ITS REPRESENTATIVES TO YOU TO OBTAIN ANY LINE OF CREDIT, BANK LOAN, DEBT FINANCING, BORROWING AUTHORITY AND/OR PROMISE OF FUND.**"

#### 1. West Yost's Contentions Regarding Plaintiffs' Second Subpoena to CBC

WY seeks a protective order against the subpoena issued upon CBC because it seeks disclosure of information and documents that are unequivocally irrelevant and not proportional to the need of the case <u>because the time period for which records are sought lacks any nexus to the claims made in this action</u>, which are



ROPERS MAJESKI A Professional Corporation Los Angeles

based on alleged misrepresentations by WY purportedly leading to Plaintiffs' acquisition of shares—noting that Dopudja had in fact acquired close to a third of his shares prior to the RSA being brought into play.

The concerns arising from the time period for which records are sought lacking any nexus to the claims made in this action and making them wholly irrelevant and not proportional to the need of the case are compounded by the nature of the information and documents sought, namely, financial and corporate information and documents, by Plaintiffs who are competitors of WY through the entity started following their departure from WY—the same entity through which they violated Section 7.11 of the RSA leading to the liquidated damages award against them.

**a. Applicable Standard**

The applicable standard at play here, but ignored by Plaintiffs, is that the scope of the permissible discovery under Rule 26(b) of the Federal Rules of Civil Procedure is limited to those issues "relevant to any party's claim or defense and proportional to the needs of the case"—the determination of which necessarily encompasses the temporal nexus of the time covered by the discovery to the issues in the case. Parties are limited to obtaining "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense …." Fed. R. Civ. P. 26. "Although relevance for discovery purposes is defined very broadly, it is not without boundaries." *Burke v. Basil*, 2021 WL 400516, at *2 (C.D. Cal. Jan. 29, 2021) (citing Rule 26(b)(2)). Discovery "must not be based on the requesting party's mere suspicion or speculation." *Belling v. DDP Holdings, Inc.*, 2013 WL 12140986, at *3 (C.D. Cal. May 30, 2013); *Rivera v. NIBCO*, 364 F.3d 1057, 1072 (9th Cir. 2004) ("District courts need not condone the use of discovery to engage in fishing expeditions" (internal quotation marks and citations omitted)).

/ / /

/ / /



ROPERS MAJESKI
A Professional Corporation
Los Angeles

**b. Plaintiffs' Second Subpoena to CBC Violates the Applicable Standards and Therefore Justify the Issuance of a Protective Order**

Again, the scope of the permissible in this case is based on the issues on the case, including the time associated with the events giving rise to the action, which are delineated by the events underlying the Complaint and the causes of action therein, i.e., Defendants' ***alleged material misrepresentations relating to Defendant's stocks and the RSA associated therewith*** claimed to have led to Plaintiffs' purchase of their respective shares.

Thus, discovery in this matter is to be limited to documents and information associated with the time period covered by the events underlying those causes of action and the defenses thereto, which does not encompass the December 30, 2024 to the present documents sought from CBC—the issues in this action being centered on alleged conduct taking place between 2016 and 2021 purportedly establishing the unequal treatment of Plaintiffs by WY with regard to their shares.

Here, the second subpoena issued to CBC seeks documents that undisputedly fall outside the relevant time period, therefore clearly making them irrelevant and not proportional to the need of the case, moreover considering the sensitive nature of the documents sought. Specifically, Plaintiffs demands that CBC produces information and documents for the period of December 30, 2024 to the present, received from WY in connection with efforts to secure any line of credit, bank loan, debt financing, borrowing authority and/or promise of fund. Considering that the events underlying the claims made in this action took place between 2016 when shares were first purchased by Dopudja and 2021 when an Option Event was triggered by Plaintiffs' respective resignation, it is therefore undisputable that Plaintiffs' second subpoena is abusively overbroad in time and burdensome in that it aims at obtaining documents and information that are wholly irrelevant and not proportionate to the need of the case. This is especially true in the context of non-party discovery as the need to limit the permissible scope of discovery applies with

even greater force in the context of non-party discovery. See, *Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.* 649 F.2d 646, 649 (9th Cir. 1980). Additionally, but no less important, is the fact that the categories of documents sought by the overbroad in time second subpoena encompass private, confidential, proprietary and privileged information violating the rights of privacy of third parties (shareholders of WY) as well as of WY, e.g., tax returns relating to a time period bearing no relevancy to the case.

As the gravamen of this action is admittedly the misrepresentations alleged to have been made to Plaintiffs by WY through two of its officers in connection with WY's stock, in the context of Plaintiffs' purchase thereof (starting in 2016) and subsequent Option Event resulting in the redemption thereof (2021) pursuant to the RSA applicable to all shareholders, there is nothing arising from such claims that provides Plaintiffs an untethered right to WY's corporate and financial records, and specifically to records pertaining to requests for line of credits or bank debts from December 30, 2024 to the present.

While Plaintiffs may seek to argue that records for the period covered by the second subpoena (December 30, 2024, to the present) may lead to the identification of additional misrepresentations—such argument would be nothing but more efforts at muddying the limited issues in this case, i.e., the ***misrepresentations to Plaintiffs*** leading to purchase of shares. Similarly, Plaintiffs anticipated argument that the discovery is necessary for them to be able to prepare for trial based on the motion for judgment on the pleadings filed by Defendants is non-sensical—such motion being based on the pleadings, not financial and corporate records. Finally, Plaintiffs' anticipated additional argument that this Court already ruled on the issue herein would be misleading in that the gravamen of the instant motion is the new time period covered by the second subpoena, which unquestionably render it excessive as seeking documents and information not relevant to the claims made and not proportional to the need of the case—the events underlying this action

ROPERS MAJESKI
A Professional Corporation
Los Angeles

having taken place more than three years before the period for which records are sought.

Thus, it is axiomatic that Plaintiffs have no legitimate need, and thus no right, to the requested records because records from December 30, 2024, to the present bear no relevancy to the issues in this case, all based on events taking place between 2016 and 2021. Of further concern is the fact that —the information sought solely pertains to the operations of WY, a competing entity to the business launched by Plaintiffs immediately following their resignations.

Plaintiffs' second subpoena to CBC is nothing if not an abuse of the discovery process, as it does not even close to seeking information and documents relevant to and proportional to the need of this action—this second subpoena seeks documents from December 2024 to the present while this action is based on events taking place between 2016 and 2021—while seeking private, confidential, proprietary and privileged information and documents of WY, a competitor of Plaintiffs. Accordingly, a protective order should be entered against Plaintiffs' subpoena to CBC.

Finally, Plaintiffs' subpoena is the second being issued upon CBC, a third party to this action, adding to the burden to CBC by seeking documents and information not relevant to and not proportional to the need of the case.

For the reasons stated above, WY respectfully requests that the Court enter a protective order against Plaintiffs' second subpoena to CBC in its entirety or, in the alternative, issue a protective order significantly narrowing the scope of the Subpoenas and limiting the documents requested for the December 30, 2024, to the present period to those relevant and proportional to the issues in this case, namely documents containing information associated with the shares previously held by Plaintiffs, if any.

Such relief is necessary to prevent undue burden and expense on CBC, to protect WY's sensitive current financial and corporate information and to protect

ROPERS MAJESKI
A Professional Corporation
Los Angeles

the integrity of the discovery process.

**2. Plaintiffs' Contentions Regarding Their Second Subpoena to CBC**

Plaintiffs' earlier discovery and subpoena responses allowed by this Court has resulted in the disclosure of records and documents supporting amendments to Plaintiffs' complaint, a motion which is scheduled for September 22, 2025. Included with the first subpoena to California Bank of Commerce were records dated up to December 31, 2023 related to Defendant WY's finances, shareholder rolls, shareholder equity and representations about redemptions of shares from shareholders. Those records continue to show representation by Defendant WY that it "redeemed" the shares of Plaintiffs, and its financial records reflect their purchase and a payment form them with no reference to those shares being voided of cancelled before a reverse dilution of the ownership interest being prorated among other shareholders, and make no reference that Defendant WY complied with any law or regulation in removing Plaintiffs as shareholders—or provided them with proper documentation needed by them for tax or accounting purposes.

**B. Plaintiffs' Second Subpoena to BFBA**

The second subpoena to BFBA, which provides for a production date of September 2, 2025, sets for the scope of what is requested as follows:

> "The records to be produced are described as follows: **THE RECORDS REQUESTED ARE from 12/30/2024 to present FOR THE FOLLOWING TYPES OF RECORDS: ANY AND ALL TAX FORMS, ACCOUNTING RECORDS, DOCUMENTS, SPREADSHEETS AND REPORTS RECEIVED FROM, EXCHANGED WITH OR PROVIDED TO WEST YOST & ASSOCIATES, INC. FOR THE YEARS 2016 TO 2023, INCLUDING BUT NOT LIMITED TO FINANCIAL REPORTS, PROFIT AND LOSS STATEMENTS, SHAREHOLDER DISTRIBUTION RECORDS OR DOCUMENTS, BUY/SELL AGREEMENTS, SUBCHAPTER-S FILINGS, AUDIT FINDINGS OR REPORTS, CORPORATE MEETING MINUTES FOR BOTH SHAREHOLDERS AND BOARD OF DIRECTOR MEETINGS, AND ALL EMAILS, CORRESPONDENCE AND/OR**

ROPERS MAJESKI
A Professional Corporation
Los Angeles

**COMMUNICATION RECORDS WITH WEST YOST & ASSOCIATES, INC. OR ANY OF ITS AGENTS, OFFICERS, DIRECTORS OR REPRESENTATIVES."**

**1. West Yost's Contentions Regarding Plaintiffs' Second Subpoena to BFBA**

WY seeks a protective order against the subpoena issued upon BFBA because it seeks disclosure of information and documents that are unequivocally irrelevant and not proportional to the need of the case because the time period for which records are sought lacks any nexus to the claims made in this action, which are based on alleged misrepresentations by WY purportedly leading to Plaintiffs' acquisition of shares—noting that Dopudja had in fact acquired close to a third of his shares prior to the RSA being brought into play.

The concerns arising from the time period for which records are sought lacking any nexus to the claims made in this action and making them wholly irrelevant and not proportional to the need of the case are compounded by the nature of the information and documents sought, i.e., financial and corporate information and documents, by Plaintiffs who are competitors of WY through the entity started following their departure from WY—the same entity through which they violated Section 7.11 of the RSA leading to the liquidated damages award against them.

**a. Applicable Standard**

The applicable standard here is the same as that discussed in section **IV. A.1.a.** hereinabove and not repeated herein so as to avoid unnecessary duplication and lengthening of this submission. Of specific relevance and application to this second subpoena is the time period for which records are sought again seeking records undisputedly outside the scope of permissible discovery under Rule 26(b) of the Federal Rules of Civil Procedure, which is limited to those issues "relevant to any party's claim or defense and proportional to the needs of the case"—the determination of which necessarily encompasses the temporal nexus of the time



ROPERS MAJESKI A Professional Corporation Los Angeles

covered by the discovery to the issues in the case.

**b. Plaintiffs' Second Subpoena to BFBA Violates the Applicable Standards and Therefore Justify the Issuance of a Protective Order**

As it is undisputable that the discovery in this case need be limited to issues underlying the causes of action for Violations of Section 10(b) of the Exchange Act and Fraud and their underlying charging allegations, the making of ***alleged material misrepresentations allegedly leading to Plaintiff's purchase of WY's stock***, subject to the prior determinations associated with the RSA made in the now concluded Arbitration between the parties, Plaintiffs' subpoena to BFBA is clearly an abuse of the discovery process.

Thus, discovery in this matter is to be limited to documents and information associated with the time period covered by the events underlying those causes of action and the defenses thereto, i.e., 2016 to 2021, which does not encompass the December 30, 2024 to the present documents sought by Plaintiffs' second subpoena to BFBA—the issues in this action being centered on alleged conduct taking place between 2016 and 2021 purportedly establishing the unequal treatment of Plaintiffs by WY with regard to their shares.

Here, the second subpoena issued to BFBA seeks documents that undisputedly fall outside the relevant time period, therefore clearly making them irrelevant and not proportional to the need of the case, moreover considering the sensitive nature of the documents sought. Specifically, Plaintiffs demands that BFBA produces financial and corporate information and documents for the period of December 30, 2024 to the present provided to BFBA as CPA to WY. Considering that the events underlying the claims made in this action took place between 2016 when shares were first purchased by Dopudja and 2021 when an Option Event was triggered by Plaintiffs' respective resignation, it is undisputedly clear that Plaintiffs' second subpoena to BFBA is abusively overbroad in time and burdensome in that it aims at obtaining documents and information that are wholly



ROPERS MAJESKI
A Professional Corporation
Los Angeles

irrelevant and not proportionate to the need of the case. This is especially true in the context of non-party discovery as the need to limit the permissible scope of discovery applies with even greater force in the context of non-party discovery. See, *Dart Indus. Co., Inc. v. Westwood Chem. Co., Inc.* 649 F.2d 646, 649 (9th Cir. 1980). Additionally, but no less important, is the fact that the categories of documents sought by the overbroad in time second subpoena encompass private, confidential, proprietary and privileged information violating the rights of privacy of third parties (shareholders of WY) as well as of WY, e.g., board minutes, tax returns relating to a time period bearing no relevancy to the case.

As the gravamen of this action is admittedly the misrepresentations alleged to have been made to Plaintiffs by WY through two of its officers in connection with WY's stock, in the context of Plaintiffs' purchase thereof (starting in 2016) and subsequent Option Event resulting in the redemption thereof (2021) pursuant to the RSA applicable to all shareholders, there is nothing arising from such claims that provides Plaintiffs an untethered right to WY's corporate and financial records from December 30, 2024 to the present.

While Plaintiffs may seek to argue that records for the period covered by the second subpoena (December 30, 2024, to the present) may lead to the identification of additional misrepresentations—such argument would be nothing but more efforts at muddying the limited issues in this case, i.e., the ***misrepresentations to Plaintiffs*** leading to purchase of shares. Similarly, Plaintiffs anticipated argument that the discovery is necessary for them to be able to prepare for trial based on the motion for judgment on the pleadings filed by Defendants is non-sensical—such motion being based on the pleadings, not financial and corporate records. Finally, Plaintiffs' anticipated additional argument that this Court already ruled on the issue herein would be misleading in that the gravamen of the instant motion is the new time period covered by the second subpoena, which unquestionably render it excessive as seeking documents and information not relevant to the claims made

and not proportional to the need of the case—the events underlying this action having taken place more than three years before the period for which records are sought.

Thus, it is axiomatic that Plaintiffs have no legitimate need, and thus no right, to the requested records because records from December 30, 2024, to the present bear no relevancy to the issues in this case, all based on events taking place between 2016 and 2021. Of further concern is the fact that —the information sought solely pertains to the operations of WY, a competing entity to the business launched by Plaintiffs immediately following their resignations.

Plaintiffs' second subpoena to BFBA is nothing if not an abuse of the discovery process, as it does not even close to seeking information and documents relevant to and proportional to the need of this action—this second subpoena seeks documents from December 2024 to the present while this action is based on events taking place between 2016 and 2021—while seeking private, confidential, proprietary and privileged information and documents of WY, a competitor of Plaintiffs. Accordingly, a protective order should be entered against Plaintiffs' subpoena to BFBA .

Finally, Plaintiffs' subpoena is the second being issued upon BFBA, a third party to this action, adding to the burden to CBC by seeking documents and information not relevant to and not proportional to the need of the case. To the extent Plaintiffs seek to argue that the second subpoenas seeks records for 2016-2023—based on the poor and confusing of the scope of documents sought—it is furthermore burdensome and abusive as the first subpoena issued to BFBA, which was complied with, had sought the same categories of records for that period!

For the reasons stated above, WY respectfully requests that the Court enter a protective order against Plaintiffs' second subpoena to BFBA in its entirety or, in the alternative, issue a protective order significantly narrowing the scope of the Subpoenas and limiting the documents requested for the December 30, 2024, to the

ROPERS MAJESKI
A Professional Corporation
Los Angeles

present period to those relevant and proportional to the issues in this case, namely documents containing information associated with the shares previously held by Plaintiffs, if any.

Such relief is necessary to prevent undue burden and expense on BFBA, to protect WY's sensitive current financial and corporate information and to protect the integrity of the discovery process.

**2. Plaintiffs' Contentions Regarding Their Second Subpoena to CBC**

Based on records received from BFBA per the first subpoena, Defendant WY continues to use BFBA as its accounting firm. These documents are important to Plaintiffs' right to discovery because Mr. Ernie Liu specifically testified that WY relied on the guidance of this accounting firm when handling the voiding and tax reporting for the shares of Mr. Dopudja and Mr. Wells and for the issuance of K-1s to them. The financial reports of this firm also continue to reference a "dispute" between Plaintiffs and WY, although they also show Plaintiffs' shares were "redeemed" as early as 2021. Mr. Liu opened the door to full discovery of information provided to BFBA by arguing to the arbitrator that what it did was in line with CPA guidance—importantly with regard to voiding of shares, how the alleged redemptions occurred and the tax consequences. (November 15, 2023, Arbitration Transcript P. 451)

WY cannot take the position that it can rely on the input of an accounting firm to make decisions about the shares of Mr. Dopudja and Mr. Wells but then claim these are somehow privileged or not discoverable.

Additionally, BFBA, LLP's review of WY's financial statements and audit of same are an integral part of the evaluation process that Chartwell uses when conducting their analysis to determine the value of WY's stock. Accordingly, this

/ / /

/ / /



ROPERS MAJESKI A Professional Corporation Los Angeles

information is discoverable as it relates to the representations made to Plaintiffs regarding the value of their stock.

Dated: August 27, 2025

LAW OFFICES OF THOMAS L. GOURDE

By: */s/ Thomas L. Gourde*
THOMAS L. GOURDE
Attorneys for Plaintiffs,
STEPHEN DOPUDJA and JON WELLS

Dated: August 27, 2025

ROPERS MAJESKI PC

By: */s/ Pascale Gagnon*
STEPHEN J. ERIGERO
PASCALE GAGNON
Attorneys for Defendants,
WEST YOST & ASSOCIATES, INC.,
CHARLES DUNCAN and ERNIE LIU

**ATTESTATION**

Pursuant to Local Rules 5-4.3.4(a)(2)(i), I, Pascale Gagnon, Esq., attest that the signatories listed above, on whose behalf this filing is submitted, concur in the filing's content and have authorized the filing.

Pascale Gagnon, Esq.

ROPERS MAJESKI
A Professional Corporation
Los Angeles